UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 19-23004-CV-MARTINEZ-OTAZO-REYES

BARRAKUDA LIMITED, a foreign limited liability corporation

    Plaintiff,

v.

ZAZABY JEWELS, INC., a Florida Corporation, DUTY FREE WORLD, INC., a Florida Corporation, and MAYRA DEL VALLE, an individual, *d/b/a*, "TRIANA" and "TRIANA LLC,"

    Defendants.

_____/

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants Mayra Del Valle, Zazaby Jewels, Inc., and Duty Free World, Inc.'s Motion to Dismiss. [ECF No. 11]. The Court has reviewed the Motion, Plaintiff's Response in Opposition thereto, [ECF No. 15], and the pertinent portions of the record. After careful consideration, and being otherwise fully advised of the premises, the Court grants Defendants' Motion.

    **I.**    **BACKGROUND**

Defendant Mayra Del Valle is the owner and president of two Florida corporations: Defendants Zazaby Jewels, Inc. ("Zazaby") and Duty Free World Inc. ("DFWI"). Both companies import and sell luxury consumer products, including health and beauty supplies. Plaintiff Barrakuda is a Dubai corporation and an international buyer and seller of consumer products. During what started as a "positive working relationship," Plaintiff ordered and received hundreds of thousands of dollars of products from DFWI. During these initial transactions, Plaintiff usually

1

received invoices from Zazaby rather than DFWI. Sometimes, Defendant Del Valle conducted business in her personal capacity, or using the pseudonyms "Triana" or "Triana LLC." For ease of reference, the Court will refer in general to Defendant Del Valle, naming the corporations only where necessary.

This relationship went awry in October of 2017, when Del Valle leveraged the goodwill between the parties to persuade Plaintiff to place another order and, this time, to pay in advance. Relying on Del Valle's promise to deliver the goods promptly, Plaintiff ordered about $900,000 worth of beauty products from DFWI. Within days of receiving Plaintiff's wire transfer, Del Valle claimed her supplier "cut her off." Plaintiff argues this was a lie and Del Valle instead diverted the funds for her personal use.

Over the next two months, Del Valle offered various incoherent excuses for not returning Plaintiff's funds. When Plaintiff eventually threatened Del Valle with a lawsuit, she offered to provide other marketable products. Plaintiff agreed. In March of 2018, Del Valle began delivering substitute products. According to Plaintiff, however, the wholesale market value of those products is approximately $344,000 less than what Plaintiff first paid. Ten months after beginning to deliver the substitute products, Del Valle refused to tender any additional products or otherwise refund Plaintiff's losses.

Plaintiff filed suit. The Complaint raises seven causes of action, all under Florida law: fraud (Count I), conversion (Count II), civil theft (Count III), punitive damages (Count IV)[1], violations of Florida's Deceptive and Unfair Trading Practices Act ("FDUTPA") (Count V), breach of contract (Count VI), and unjust enrichment (Count VII).

---

[1] As discussed further, punitive damages are not considered a separate cause of action in the Eleventh Circuit. *See Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir. 1999).

II. **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "a short and plain statement" that shows "the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). Though a pleading need not contain "detailed factual allegations," it requires more than an "unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Id.* Indeed, a pleading that offers "labels and conclusions" or a "mere recitation of the elements of a cause of action will not do." *Id.* In particular, Rule 8 requires "a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")).

Allegations of fraud or mistake, however, must be pled with particularity under Rule 9(b). *Iqbal*, 556 U.S. at 686. Under this heightened pleading standard, a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements were misleading; and (4) what the defendants gained by the alleged fraud. *Wilding v. DNC Services Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)).

When reviewing a motion to dismiss, a court accepts the facts in the complaint as true and views ambiguities in the light most favorable to the plaintiff. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005). However, "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Id.* (citation omitted).

### III. DISCUSSION

The Complaint is rife with issues—many of which Plaintiff concedes need to be amended or "clarified." [*See, e.g.*, ECF No. 6–7, 15]. Namely, as further discussed below, Plaintiff consistently attempts to reformulate its own factual allegations regarding the existence of a contract to avoid adverse rulings on its untenable tort claims.[2] [*Compare, e.g.*, ECF No. 15 at 16 ("[N]o contract is alleged in connection with Plaintiff's FDUTPA claim.") *with* ECF No. 1 ¶ 48 ("The agreement for Defendants to provide the respective products in exchange for the negotiated price of $875,350.00 was a valid and binding contract.")]; *see also Sun Life Assurance Co. v. Imperial Holdings, Inc.*, No. 13-80385-Civ-Brannon, 2016 WL 10565034, at *5 (S.D. Fla. Sept. 22, 2016) (finding it "well settled that plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims.").

Simply put, this case involves a contractual dispute between merchants. Nonetheless, the issue of whether Plaintiff's tort claims survive dismissal warrants additional consideration. Before turning to the parties' arguments, the Court must address whether Plaintiff's grouping of the Defendants renders the Complaint an impermissible shotgun pleading.

#### A. *Barrakuda's Grouping of Defendants Warrants Amendment*

Defendants ask the Court to dismiss the Complaint because it asserts each cause of action against all three Defendants. [ECF No. 11 at 6–7]. As such, Defendants argue the Complaint amounts to a shotgun pleading and does not afford each Defendant a chance to respond to the

---

[2] For example, in Plaintiff's Response to the Motion to Dismiss, Plaintiff emphasizes that "the existence of a 'Revised Agreement'…applies *only* to the single claim of breach of contract…." [ECF No. 15 at 9 (emphasis in original)]. Though alternative pleading is generally permissible under Federal Rule of Civil Procedure 8, this type of pleading is not. Plaintiff cannot avoid its own factual allegations. It is clear from a plain reading of Plaintiff's Complaint, that there was: (1) an initial contract for the "Original Products," and (2) a revised agreement whereby Plaintiff accepted $500,000 worth of "other marketable products." [ECF No. 1 ¶¶ 13–14, 16–17, 26, 31, 35, 47–50].

allegations against it. [*Id.*]. Plaintiff rebuffs this assertion, claiming that any confusion is due to Defendants' "unusual transaction structure and double-talk explanations." [ECF No. 15 at 5]. Plaintiff also acknowledges, however, that at least as to certain counts, the grouping of Del Valle in her personal capacity with the corporate Defendants "should be clarified." [*Id.* at 6].

If a complaint "indiscriminately groups the defendants together," it flouts the minimum standard of Rules 8 and 10(b), and constitutes one of the four "mortal sins" of shotgun pleading. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (identifying the fourth "relatively rare" sin of shotgun pleading as one where the complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against"); *see also Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015). The operative phrase: "indiscriminately groups." The Eleventh Circuit has permitted the grouping of defendants where the complaint could be read to "aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

Here, viewing the facts in the light most favorable to Plaintiff, the Complaint can be read to aver that all three Defendants are responsible for the alleged wrongdoing. According to the "unusual scheme" alleged in the Complaint, DFWI was to deliver the goods, Zazaby the invoice, and Del Valle the wiring instructions. In Del Valle's words, Zazaby sent invoices for DFWI's transactions because Zazaby was an "affiliate company that she also owned and operated." So, the fact that Plaintiff accuses Defendants collectively does not necessarily render the Complaint a deficient shotgun pleading. Nonetheless, the Complaint in general needs to be amended, and because Plaintiff concedes that such amendment should clarify the relationship between certain

5

Counts and certain Defendants, the Court orders Plaintiff to do so in any subsequent amended pleading.

### B. *Article Two of Florida's UCC Governs This Dispute*

There are two agreements at issue—the initial agreement for the "Original Products" and the revised agreement whereby Plaintiff agreed to allow Defendants to ship alternative marketable products as a substitute for the "Original Products." Both fall squarely within the purview of Florida's Uniform Commercial Code ("UCC").

Article Two of the UCC, as adopted by the Florida legislature, applies to transactions for the sale of goods. Fla. Stat. § 672.102. The code defines goods as "all things movable." Fla. Stat. § 672.105(1). Because this case involves a transaction for the sale of beauty products, which are movable goods, the UCC applies.

Because mutual assent is a prerequisite for the formation of any contract, the starting point for this analysis is the parties' assent to the initial agreement. *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989). The UCC takes a liberal approach to assent, finding it "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Fla. Stat. § 672.204(1).

Regarding the initial transaction for the "Original Products," it is clear that the parties' conduct indicates they recognized a contract. Plaintiff paid Defendant nearly $900,000 for the delivery of various consumer beauty products, as evidenced by the invoice. Indeed, Plaintiff acknowledges that the parties had conducted numerous similar transactions and maintained a "positive working relationship" over the course of a number of years.

Yet this does not settle the issue at the center of this dispute: what to make of Plaintiff's acceptance of other marketable products in place of those it originally ordered. Under Count VI of

the Complaint, Plaintiff alleges the parties "mutually agreed" to a revised contract, under which it would accept other marketable products to replace the products it first negotiated for. [ECF No. 1 at ¶ 50]. In its Response, Plaintiff now claims that allegation applies only to Count VI, which is "purposely structured as an alternative form of relief." [ECF No. 15 at 9]. But a plain reading of the complaint suggests otherwise. Not only is Plaintiff's characterization of Count VI as an alternative theory of recovery unsupported by the Complaint itself,[3] the factual allegation in paragraph fifty tracks the allegations elsewhere in the Complaint. Additionally, the Complaint generally alleges and incorporates into every count—not just Count VI's breach of contract claim—that Plaintiff permitted Defendants to provide other marketable products in place of the original products. [ECF No. 1 at ¶¶ 16–17, 22, 29, 33, 38, 41, 46].

At any rate, the Complaint need be read as a whole, accounting for the totality of Plaintiff's allegations. *See Magluta v. Samples*, 375 F.3d 1269, 1274–75 (11th Cir. 2004); *see also Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005) (noting placement of an allegation in another count is unimportant when reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

Viewed in this light, Plaintiff's allegations amount to a modification of the original contract. The law in Florida is well-established: parties can discharge or modify a contract through a subsequent agreement. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (citations omitted). The parties' subsequent conduct can also modify the terms of a contract. *Id*. at 382. As Plaintiff tells it, the parties agreed to allow Del Valle to provide other marketable goods in place of the original goods. [ECF No. 1 at ¶ 16–17]. Plaintiff disputes that such agreement was a

---

[3] Barrakuda does assert Count VII, however, as an alternative to Counts I through VI. *See* [ECF No. 1 at ¶53].

7

modification and argues instead that it constituted a novation, which requires additional consideration under Florida law.

Regardless of the semantics[4], the revised agreement was valid. For one, and most importantly, the UCC governs; and under the UCC, consideration is not required for the parties to be bound by a modified contract. *See* Fla. Stat. § 672.209(1).

Nonetheless, based on Plaintiff's allegations, the parties' revised agreement included additional consideration. In fact, Plaintiff forwent legal action when Del Valle agreed to ship the replacement goods. [*Id.* at ¶ 26]; *see Crystal Colony Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 6 F. Supp. 3d 1295, 1299 (S.D. Fla. 2014) (citing *Citibank Int'l v. Mercogliano*, 574 So. 2d 1190, 1191 (Fla. 3d DCA 1991) ("It is well settled Florida law that forbearance from pursuing a legal remedy…constitutes valid consideration for an agreement.")). And Del Valle discharged a portion of her duties under the modification when she delivered goods worth more than half of what Barrakuda paid for under the modification.

All in all, Plaintiff's allegations amount to a contractual dispute over the value of the substitute products under the parties' modified agreement. As such, the UCC applies.

### C. *Independent Tort Doctrine*

Almost all of Plaintiff's tort-based claims are disposed of by Florida's independent tort doctrine.

"It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Rodriguez v. Branch Banking and Trust Co.*, No. 1:19-cv-25191-KMM, 2020 WL 5640399, at *3 (S.D. Fla.

---

[4] The Court recognizes that the difference between a modification and a novation does not legally amount to mere semantics; however, for purposes of Plaintiff's arguments in this case, it does. Indeed, the Court finds that the facts alleged here do not amount to a novation, but rather a modification, given that the revised agreement changed one term of the initial contract—the goods which were to be delivered.

July 9, 2020) (quoting *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, No. 3D16-1364, — So. 3d —, 2020 WL 1451990, at *3 (Fla. 3d DCA Mar. 25, 2020)); *see also Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017). "[T]he tort is independent if the plaintiff must prove facts 'separate and distinct from the breach of contract.'" *Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1264 (M.D. Fla. 2010) (citation omitted). To state a claim for a tort that is independent of a claim for breach of contract, "the damages stemming from that [tort] must be independent, separate and distinct from the damages sustained from the contract's breach." *Peebles*, 223 So. 3d at 1068; *see Oginsky v. Paragon Prop. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1377 (S.D. Fla. 2011) (citation omitted).

Here, Plaintiff's claims for fraud/fraud in the inducement, conversion, and civil theft are ultimately based on the same underlying conduct giving rise to its breach of contract claim. Such conduct includes the failure to perform under the initial agreement by providing Plaintiff with $875,350.00 worth of luxury products, and subsequently failing to provide adequate substitute products per the parties' revised agreement. Indeed, Plaintiff defines this conduct as a continuing breach. [ECF No. 1 ¶ 50].

"Generally, fraud in the inducement is an independent tort because the alleged misrepresentation inducing one to enter into the contract is unrelated to the obligations under the contract." *Island Travel & Tours, Ltd.*, 2020 WL 1451990, at *3 n.7. Here, however, Plaintiff's tort-based claims are clearly duplicative of its breach of contract claim. *See id.* Indeed, not only are the factual allegations identical, but Plaintiff seeks to recover the exact same damages—the $344,945 "Balance" due under the contract. *Id.*; *see also Reagan Wireless Corp. v. Apto Solutions, Inc.*, No. 18-cv-61147-Bloom/Valle, 2018 WL 4901127, at *2–4 (S.D. Fla. Oct. 9, 2018) (barring a breach of contract claim couched as fraudulent inducement).

9

Plaintiff's civil theft[5] and conversion claims fail for the same reason. "[C]ivil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008); *see Island Travel & Tours, Ltd.*, 2020 WL 1451990, at *3.

Accordingly, Counts I–III of the Complaint are barred by the independent tort doctrine and are due to be dismissed.[6]

### D. *Fraud/Fraudulent Inducement (Count I)*

Plaintiff's fraud-based claim fail for additional reasons. Under Florida law, a party waives its "claims based on fraud" when it later executes an agreement "respecting the same subject matter as the alleged fraudulent transaction." *Coral Gables Imp. Motorcars, Inc. v. Fiat Motors of N. Am., Inc.*, 673 F.2d 1234, 1240 (11th Cir. 1982) (citations omitted). That is so, however, only if the defrauded party had "actual or imputed knowledge of the facts constituting the alleged fraud at the time the subsequent agreement was made." *Id.*

Plaintiff's allegations establish that it waived its "claims based on fraud," when the parties modified their agreement. *Coral Gables Imp.*, 673 F.2d at 1240. In particular, Plaintiff alleges the purpose of Del Valle's false representation was "to induce [Barrakuda] to pay Del Valle and her companies hundreds of thousands of dollars." [ECF No. 1 at ¶ 24]. Relying on that representation, Plaintiff paid up front. Plaintiff thus alleges fraud in the inducement related to the original

---

[5] The Complaint is also devoid of any indication—other than conclusory statements and speculation—that Defendants had the requisite criminal intent prior to the alleged breach. *See Island Travel & Tours, Ltd.*, 2020 WL 1451990, at *3. For example, "evidence of actual performance of some portion of the contract negates an intent not to perform at the inception of the contract." *Segal v. State*, 98 So. 3d 739, 740–44 (Fla. 4th DCA 2012).

[6] "It would be contrary to the basic premise of the independent tort doctrine to allow such pleadings in the alternative." *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, No. 8:20-cv-604-T-33JSS, 2020 WL 5350303, at *4 n.4 (finding that common law fraud claims may not be pled in the alternative to a breach of contract claim).

contract—prior to the modification. Because the parties' modification concerns "the same subject matter" as the original question, the question that remains is whether Plaintiff had "actual or imputed knowledge" of the fraud at the time of the parties' modified agreement. *Coral Gables Imp.*, 673 F.2d at 1240.

Plaintiff alleges that in the months between the original transaction and the modification, Del Valle offered "various excuses" for her inability to return Barrakuda's funds. [ECF No. 1 at ¶ 16]. The Complaint labels these excuses as incoherent. [*Id.* at ¶ 20]. It then concedes that Del Valle agreed to ship the replacement goods "[a]fter Barrakuda complained and threatened to file a lawsuit" against her. [*Id.* at ¶ 26]. In effect, this shows Plaintiff had actual or imputed knowledge of Defendants' alleged fraud before the later modification. *Coral Gables Imp.*, 673 F.2d at 1240. Based on these allegations, the Court finds Plaintiff waived its right to assert any claims for fraud based on the performance—or lack thereof—of the original contract.

Even if Plaintiff did not waive its claim for fraud, the Complaint fails to satisfy the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b). Under Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). The only statement referenced in the Complaint is that Del Valle "had the ability to immediately obtain the Products," which Plaintiff asserts is a "lie." [ECF No. 1 at ¶ 23]. Plaintiff fails to "plead any details" in support of its fraud claim. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1070 (11th Cir. 2007) (dismissing complaint for failure to plead fraud with specificity when it lacked details on how the

11

defendants accomplished the fraud and which agents participated in the fraudulent scheme). Plaintiff thus failed to plead fraud with the requisite specificity under Rule 9(b).

## E. *Florida's Deceptive and Unfair Trading Practices Act (Count V)*

Under Count V, Plaintiff accuses Del Valle of violating FDUTPA. To state such a claim, Plaintiff must allege: (1) a deceptive or unfair trade practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). Deception occurs where there is a representation, omission, or practice likely to mislead a reasonable consumer to that consumer's detriment. *PNR, Inc. v. Beacon Prop Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (citation omitted). An unfair practice offends public policy and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.*

Florida law permits a FDUTPA claim to travel with a related breach of contract claim if the FDUTPA claim challenges the acts underlying or "giving rise" to the breach, and does not "rely solely on a violation of the Agreement as a basis for assertion of a FDUTPA claim." *Kenneth F. Hackett & Assocs., Inc., v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. Oct. 8, 2010) (internal quotation and citation omitted). Where a FDUTPA claim alleges something more than the mere breach of an agreement, such as misrepresentations giving rise to the breach, it may survive a motion to dismiss. *Id.*; *see also Ford Motor Co. v. Heralpin USA, Inc.*, No. 15-23638-Civ-Scola, 2015 WL 13799959, at *4(S.D. Fla. Dec. 15, 2015).

Here, however, the only misconduct alleged is: (a) the breach, which is insufficient, and (b) alleged fraudulent misrepresentations, which this Court has already deemed unsupported and conclusory. Accordingly, Plaintiff impermissibly seeks to "convert" its breach of contract claim into a claim under the FDUTPA. *See PNR, Inc.*, 842 So. 2d at 777 n.2.

Plaintiff's reliance on *Kenneth F. Hackett* is misplaced. [ECF No. 15 at 16]. In that case, the plaintiff alleged the defendants wrongly increased the price and terms under a contract and then threatened to repossess the plaintiff's personal property if the plaintiff did not agree to the price increase. *Kenneth F. Hackett*, 744 F. Supp. 2d at 1312. Under those facts, the defendants' acts underlying the breach of contract were, by themselves, unfair and deceptive. *Id.* at 1313. In contrast, Plaintiff merely alleges Del Valle's "willful" failure to deliver goods of adequate value violated the FDUTPA. [ECF No. 1 at ¶¶ 43–44]. But that allegation is a claim for breach of contract cloaked as a claim under the FDUTPA. *See Altamonte Pediatric Assocs., P.A.*, 2020 WL 5350303, at *5 n.5. Indeed, it has no independence from the breach of contract claim. This claim is therefore not viable under the FDUTPA and is dismissed.

### F. *Breach of Contract (Count VI)*

Defendants assert that Plaintiff's breach of contract claim must also be dismissed for failure to allege compliance with the UCC notice requirement in Fla. Stat. § 672.607(3)(a)—a precondition to this suit. [ECF No. 11 at 14]. Plaintiff contends that provision has no application to this case. [ECF No. 15 at 17].

It is necessary to look at the surrounding statutory framework to understand the notice requirement. Under § 672.601, if a delivery of goods "fails in *any respect to conform to the contract*," the buyer may: (1) reject the delivery in whole, (2) accept in whole, or (3) accept any part of the order and reject the rest. Fla. Stat. § 672.601. So how does the buyer convey to the seller which option he chose? If rejecting, the buyer simply notifies the seller within a reasonable time of delivery. *See* Fla. Stat. § 672.602(1). If accepting, the buyer has a reasonable chance to inspect the goods for any issues, after which the buyer's continued silence and retention of the goods is an acceptance. *See* Fla. Stat. § 672.606(1)(a)–(b). Now we arrive at the notice requirement. If the

buyer accepts delivery of the goods, the buyer must notify the seller of *any breach* within a reasonable time after discovering the breach. Fla. Stat. § 672.607(3)(a). That notice need not take "a particular form" or even use "the word breach." *Exim Brickell LLC v. PDVSA Servs. Inc.*, 516 F. App'x 742, 750–51 (11th Cir. 2013) (noting the purpose of notice provision is to give seller "early warning" that it must meet a claim for damages and to encourage pre-suit settlement). But if the buyer does not provide notice, it is "barred from any remedy." Fla. Stat. § 672.607(3)(a).

Applying that framework to this case, Plaintiff alleges Del Valle breached the modified contract by "failing to deliver" the full value of substitute goods. [ECF No. 1 at ¶ 50]. That said, Plaintiff accepted the delivery of substitute goods by retaining them after delivery.[7] [*Id.* at ¶ 17]. In essence, Plaintiff contends Del Valle's delivery of goods was still a breach of the modified agreement. It was thus incumbent upon Plaintiff to notify Del Valle of that breach "within a reasonable time" after discovering the value of the goods were less than what Plaintiff bargained for. *See* Fla. Stat. § 672.607(3)(a). There is no allegation in the Complaint that Plaintiff so complied. Plaintiff shall either amend the Complaint to include such allegation or shall comply prior to filing an Amended Complaint.

The Court thus dismisses Count V without prejudice.[8]

### G. *Unjust Enrichment (Count VII)*

Under Count VII, Plaintiff alleges unjust enrichment as an alternative theory of liability. Barrakuda maintains that discovery is the only way for it to identify which Defendant or

---

[7] This is why Plaintiff's argument—that the provision does not apply because it "never received any conforming goods at all"—misses the point. [ECF No. 15 at 17]. If Plaintiff was only willing to settle for the goods it originally contracted for, it needed to reject the delivery in whole. *See* Fla. Stat. § 672.601(1).

[8] The Court also reiterates Plaintiff's need to omit Del Valle in her personal capacity as a Defendant under this count—as conceded by Plaintiff.

Defendants obtained the benefit of the unpaid balance. [ECF No. 1 at ¶ 57]. Del Valle requests that the Court dismiss Count VII on this basis. [ECF No. 11 at 15].

To state a claim for unjust enrichment, Plaintiff must allege: (1) it conferred a benefit on the defendant; (2) the defendant knows about the benefit; (3) the defendant's acceptance and retention of the benefit; and (4) it would be inequitable under the circumstances for defendant to retain the benefit without paying for its fair value. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 877 (Fla. 2d DCA 2006) (citation omitted).

Plaintiff argues it is unclear which Defendant obtained the benefit because DFWI provided the goods, Zazaby sent the invoice, and Del Valle, in her personal capacity, arranged the wire transfer. [ECF No. 15 at 18]. On that basis, Plaintiff contends it "cannot possibly determine" which Defendant obtained the funds without discovery. [*Id.*]. This argument has merit, especially in light of the Court's determination that Plaintiff did not impermissibly group Defendants together and avers that all three Defendants are responsible for the alleged wrongdoing. Nonetheless, the court is unpersuaded.

Plaintiff used a wire transfer to make the payment. Using the wire transfer instructions, or the paper trail from the wire transfer itself, Plaintiff can determine the owner of the recipient account. So Plaintiff is not "foreclosed" from establishing which Defendant conferred the benefit. If discovery reveals a benefit was also conferred to another Defendant, amendment would be appropriate at that time. *See Bruggemann v. Amacore Grp., Inc.*, No. 8:09-cv-2562-T-30MAP, 2010 WL 2696230, at *5 (M.D. Fla. July 6, 2010) (dismissing unjust enrichment claim where the claim "lumps all of the Defendants together" and "does not identify how the elements of unjust enrichment apply to [individual defendants]").

Accordingly, Count VII is dismissed without prejudice.

### H. *Punitive Damages (Count IV)*

Count IV of Plaintiff's Complaint asserts a claim for punitive damages, purportedly only in relation to Counts I (fraud/fraud in the inducement) and Count II (conversion). For one, punitive damages are not considered a separate cause of action in the Eleventh Circuit. *See Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir. 1999). Secondly, because Plaintiff seeks punitive damages only for its claims for fraud and conversion—which have been dismissed—Plaintiff's claim for punitive damages is also untenable.

### I. *Corporate Veil*

As a final matter, Defendants assert that all claims against Defendant Del Valle in her individual capacity should be dismissed for failure to pierce the corporate veil or assert any alter ego theory of liability. Because all Counts have been dismissed, the Court need not delve into this issue. The Court notes, however, that though "courts are reluctant to decide the fact intensive question of whether a corporate entity is merely an alter ego to protect an individual defendant from liability," the Complaint here is devoid of any allegations whatsoever. *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09-CV-61436, 2010 WL 1531489, at *12 (S.D. Fla. Apr. 16, 2010). Simply because the Court has decided that Plaintiff's grouping of Defendants does not run afoul of Rules 8 or 10(b) does not establish that Plaintiff has successfully established facts to support piercing the corporate veil.

### IV. CONCLUSION

Accordingly, after careful consideration, it is:

**ORDERED** and **ADJUDGED** that

1. Defendants' Motion to Dismiss Plaintiff's Complaint, [ECF No. 11], is **GRANTED.**

2. Plaintiff's Complaint is **DISMISSED without prejudice.** To the extent that Plaintiff may in good faith remedy the deficiencies noted in this Order, Plaintiff may file an Amended Complaint **on or before October 6, 2020**. Defendants shall respond to the Amended Complaint **no later than October 13, 2020**.

DONE AND ORDERED in Chambers at Miami, Florida this day 24th day of September 2020.

                                        JOSE E. MARTINEZ
                                      UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record
Magistrate Judge Otazo-Reyes