IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BARRAKUDA LIMITED, a foreign limited liability corporation,<br><br>    Plaintiff,<br>v.<br><br>ZAZABY JEWELS, INC., a Florida corporation, DUTY FREE WORLD, INC., a Florida corporation, and MAYRA DEL VALLE, an individual, *d/b/a* "TRIANA" and "TRIANA LLC,"<br><br>    Defendants. | CASE NO.: 1:19-cv-23004-JEM |

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT WITH PREJUDICE**

Defendants, Zazaby Jewels, Inc. ("Zazaby"), Duty Free World, Inc. ("DFWI") (together, Zazaby and DFW are the "Corporate Defendants"), and Mayra Del Valle ("Del Valle") (collectively, Zazaby, DFW, and Del Valle are, the "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6), move to dismiss the Amended Complaint [D.E. 62] ("Amended Complaint") filed by Plaintiff, Barrakuda Limited ("Plaintiff" or "Barrakuda"), as follows:

**I.   Overview**

Plaintiff, despite shedding four (4) of its seven (7) previously asserted, but legally unsupported, tort claims, the Amended Complaint still suffers from the same fatal flaws the Court identified in its order dismissing Plaintiff's original Complaint. *See* [DE 59] (the "Dismissal Order"). Rather than abide by the Court's finding that this case concerns an agreement between merchants for the sale of goods, Plaintiff attempts to plead around the Court's analysis in a bid to manufacture some form of liability against Del Valle individually, where none exists.

Specifically, Plaintiff's fraud in the inducement claim (Count I), remains barred by the independent tort doctrine because it continues to rely on the *same* alleged conduct and damages that gives rise to its breach of contract claim. Next, Plaintiff's Punitive Damages claim (Count II), *inexplicably*, reappears as a separate count in the Amended Complaint, notwithstanding the Court's admonition that punitive damages *cannot* form the basis for a separate cause of action and, importantly, are untenable in this case. Lastly, Plaintiff's breach of contract claim (Count III) fails to allege, as the Court directed it do, compliance with the requirements under the Florida's Uniform Commercial Code ("UCC"). Moreover, it is noteworthy that the Amended Complaint also fails to cure Barrakuda's waiver of any claims based on non-performance of the contract.

For the reasons described above and in greater detail below, Plaintiff's Amended Complaint should be dismissed *with prejudice*.

## II. The Amended Complaint Fails to Adhere to the Dismissal Order

On September 24, 2020, the Court entered the Dismissal Order. Although the Court did not dismiss Plaintiff's claims with prejudice, it established well-defined constraints within which Plaintiff could remedy the deficiencies identified in the Dismissal Order. Accordingly, any amended Complaint Barrakuda chose to file was required to conform to the following legal principles:

1. Because this case involves an agreement between merchants for the sale of goods, the UCC governs Plaintiff's and the Corporate Defendants' rights and obligations. Under the UCC, a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties, which recognizes the existence of a contract. Fla. Stat. § 672.204(1).

2.　　　Plaintiff and the Corporate Defendants, as parties to an agreement, can modify the terms thereof through a subsequent agreement or by subsequent conduct. *See St. Joe Corp. v. McIver*, 875 So.2d 375, 381-82 (Fla. 2004). Under the UCC, Barrakuda was obligated, within a *reasonable time* after it discovered any non-conformity in the goods delivered, to notify the seller of breach, or be barred from any remedy. Fla. Stat. § 672.607(3)(a).

3.　　　Barrakuda is subject to fundamental contractual principles that bar tort claims where the Corporate Defendants have not committed a breach of duty *independent* of a breach of the operative contractual obligations. *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc*., 2020 WL 1451990, at *3 (Fla. 3d DCA 2020). Barrakuda may not recast a cause of action that is otherwise a breach-of-contract claims as tort claim. *See Sun Life Assurance Co., v. Imperial Holdings, Inc*., No. 13-80385-Civ-Brannon, 2016 WL 10565034, at *5 (S.D. Fla. Sept. 22, 2016).

4.　　　Barrakuda may not recover in tort for a contract dispute unless the tort is *independent* of any breach of contract. *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc*., 2020 WL 1451990, at *3 n.7 (Fla. 3d DCA 2020).

5.　　　To state a claim for a tort that is independent from a claim for breach of contract, Barrakuda must plead damages stemming from the tort that are *independent, separate, and distinct* from the damages sustained from the contract's breach. *See Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017); *see also Oginsky v. Paragon Prop. of Costa Rica, LLC*, 784 F. Supp. 2d 1353, 1377 (S.D. Fla. 2011) (citation omitted).

6.　　　It is *contrary* to the basic aims of the independent tort doctrine to allow Barrakuda to plead fraud claims in the alternative to breach of contract. *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, 2020 U.S. Dist. LEXIS 161735, 2020 WL 5350303, at *4 n.4 (common law fraud claims may not be pled in the alternative to a breach of contract claim).

**III.     Memorandum of Law**

Plaintiff's apparent aim in flouting the above described pleading constraints appears to be an attempt to achieve a result it is not legally entitled to, i.e. relief against Delvalle, individually. The Court should reject Plaintiff's attempt to mushroom its claims beyond the Amended Pleading Constraints and dismiss the Complaint with *prejudice*.

Contrary to the Court's directives in the Dismissal Order, Plaintiff continues to pursue tort and punitive damage theories based on conduct that is *indistinguishable* from the promise to perform under the subject contract. As the Court cautioned in its Dismissal Order, Plaintiff was obligated to "remedy" these "deficiencies" in any amended pleading. Plaintiff has failed to cure this fatal flaw.

Plaintiff attempts to cure its pleading deficiencies by pleading unwarranted deductions of fact or legal conclusions masquerading as facts. This departure from the pleading standards does not make its allegations true for purposes of this Motion. *See Aldana v. Del Monte Fresh Produce, N.A. Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005). Further, the Amended Complaint must be read as a whole, accounting for the totality of the Plaintiff's allegations. *Id*. at 1248. Notwithstanding this standard, Plaintiff attempts, impermissibly, to isolate its breach of contract theory from its tort claim.

**A.      The Facts Remain the Same**.

The only material difference between the Complaint and the Amended Complaint is that Plaintiff draws unwarranted inferences and legal conclusions from the *same core* set of alleged facts. Plaintiff's subjective take on the parties' course of conduct is immaterial. *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (legal conclusions masquerading as facts will not prevent dismissal).

It is undisputed that Zazaby, as the seller, entered into an agreement (the "Merchants Agreement") for the sale of a certain quality and quantity of cosmetics ("Goods"), as memorialized by an Invoice ("Invoice") with Barrakuda the buyer. (Compl. ¶¶ 16, 44, Ex. A). Although Zazaby was the invoicing "seller," DFWI supplied the Goods pursuant to distribution agreement with the brand, La Prairie. (Am. Compl. ¶ 22).

Plaintiff alleges that the Goods were not delivered "in October, 2017," however, the Invoice does not specify a delivery date for the Goods. (Am. Compl. ¶ 22). According to Plaintiff, approximately four (4) weeks after the date of the Invoice, Del Valle informed Barrakuda that DFWI had been "cut off" by La Prairie. (Am. Compl. ¶ 22). Plaintiff's unwarranted deduction from this message is that the Goods would not be shipped in accordance with the Merchants Agreement.

Barrakuda alleges that he, "did not believe" Del Valle's explanation for why DFWI failed to ship the Goods, and characterizes Del Valle's explanation as a "false cover story." (Am. Compl. ¶ 26). When the Goods were not delivered, as agreed, Plaintiff strategically chose not to seek damages for non-delivery. (Am. Compl. ¶ 26). Instead, Barrakuda and Zazaby negotiated a modification of the contract (the "Modification"), which culminated in an "understanding." (Am. Compl. ¶ 27). The parties' ratified their understanding through a series of (alleged) post-breach transactions involving the delivery of "other goods" (the "Replacement Goods") (Am. Compl. ¶ 28). Plaintiff's decision to accept Replacement Goods in lieu of an action to recover damages under the Merchants Agreement was not based on DFWI's excuse for non-delivery under the original Merchants Agreement. (Am. Compl. ¶ 27).

Plaintiff admits that the purpose of the Modification was to "offset" Barrakuda's contract claim against Zazaby/DFWI. (Am. Compl. ¶ 27).

Pursuant to the Modification, DFWI shipped $539,869.00 worth of Replacement Goods to Barrakuda. (Am. Compl. ¶ 30). Barrakuda accepted the Replacement Goods by retaining them after delivery. (Am. Compl. ¶ 30). Plaintiff does not allege that it notified DFWI of any non-conformity of the goods shipped.

Both parties agreed that the balance due to Plaintiff under the original contract was "reduced" by the delivery of the Replacement Goods. (Am. Compl. ¶ 30). The difference between the purchase price of the Goods and the Replacement Goods is $335,481.50. (Am. Compl. ¶ 46).

    B.    **Plaintiff's Fraud Claims Fail as a Matter of Law**.

*(i) Plaintiff's Claims are Barred by the Independent Tort Doctrine*

As framed, Count III appears to seek contract damages in the alternative to the damages under Plaintiff's fraud and punitive damage theories in Count I and Count II. (Am. Compl. ¶¶ 42, 43). As the Court noted in its Dismissal Order, it is contrary to the basic premise of the independent tort doctrine to allow fraud claims to be pled in the alternative to a breach of contract. *Altamonte Pediatric Assocs., P.A.*, 2020 WL 5350303, at *4 n.4 (finding that common law fraud claims may not be pled in the alternative to a breach of contract claim).

Further, Plaintiff cannot avoid dismissal by compartmentalizing facts that acknowledge the existence of a contract. *See Aldana* at 416 F.3d 1242, 1248 (11th Cir. 2005) *citing Magluta v. Samples*, 375 F.3d 1269, 1274-75 (11th Cir. 2004) (reading complaint in its entirety when reviewing a motion to dismiss). Ultimately, whether an action is characterized as one in tort or on contract is determined by the nature of the complaint, not by the form of the pleadings, and consideration must be given to the facts that constitute the cause of action. *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1326, 1328 (S.D. Fla. 1999).

Count III of the Amended Complaint applies the above facts and acknowledges that Plaintiff's claims are limited to an action under the UCC for the difference between the original purchase price paid for the Goods and the value of the Replacement Goods accepted by Barrakuda under the replacement "omnibus agreement." (Am. Compl. ¶ 46).

The existence of an "omnibus agreement," the partial performance of which reduced Plaintiff's claims to a demand under the UCC for non-conforming goods, negates Plaintiff's tort and punitive damages theories. Plaintiff attempts to avoid this outcome by alleging that the Merchants Agreement was *automatically* rescinded by virtue of Del Valle's alleged pre-contract misrepresentations. (Am. Compl. ¶ 29). However, Plaintiff's rescission theory is premised solely on an unsupported legal conclusion and is therefore irrelevant to the Court's analysis. Regardless, Plaintiff was obligated to give notice of any intent to rescind the contract with reasonable promptness. *See Rood Co. v. Board of Public Instruction of Dade County*, 102 So. 2d 139, 141 (Fla. 1958); Fla. Stat. § 672.608(2)

The decision in *Reagan Wireless Corp. v. Apto Solutions, Inc.*, 2018 WL 4901127, at *2-4 (S.D. Fla. Oct. 9, 2018) is instructive in parsing out the difference between a pre-contract misrepresentation that ultimately goes to performance of the contract from one that would survive application of the independent tort doctrine.

In *Reagan* a cell phone distributor (Reagan) negotiated the terms for the purchase of several thousand used Google branded smartphones with Apto, a technology disposition service. *Id*. at 2. Prior to contract, Reagan asked Apto if any of the phones suffered from burnt-pixels. *Id*. at 3. Apto answered in the negative. *Id*. When Apto delivered the phones, Reagan discovered that more than half of them had burnt-pixels or were in poorer condition than listed on the invoice. *Id*. After this discovery, Apto agreed to reduce the prices on certain phones and accept the return of others. *Id*.

When Apto failed to refund to Regan the cost of the non-conforming phones, Reagan sued Apto for breach of contract, as well as fraud in the inducement. *Id*. Reagan alleged that it was induced to enter the agreement with Apto based on two misrepresentations. *Id*. First, that the phones did not have burnt-pixels, when most did. Second, that Apto had the ability issue cash refunds for returned product, when in fact Apto did not have enough cash to timely refund Reagan's return of thousands of rejected phones.

The *Reagan* court justified dismissal *with prejudice* of plaintiff's fraud in the inducement claim on the grounds that the tort theory was barred by the independent tort doctrine. The court specifically identified *a lack of distinction* between Apto's pre-contract promises concerning its ability to perform with its ultimate non-performance of its contractual obligations. *Id*. at 8.

Here, Plaintiff alleges that it was induced into entering into the Merchants Agreement based on Del Valle's (alleged) promises that: (1) DFWI was in good standing (no debt) with La Prairie; (2) DFWI would not rely on any credit terms to acquire the Goods from La Prairie; and (3) DFWI would purchase the Goods with the proceeds from the sale.

Del Valle's representations, similar to those in *Reagan*, lack any material distinction between promises concerning the **ability** to perform with DFWI's actual ability to perform. In other words, Plaintiff did not bargain for **how** DFWI would acquire the Goods, it bargained for the Goods themselves. (*Compare* Compl. ¶ 16 ↔ ¶ 43)

Moreover, Plaintiff's Amended Complaint fails to adhere to the principal discussed at length in the Court's Dismissal Order, that fraud in the inducement cannot be predicated upon a mere promise not performed. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla. 1996). As described in *HTP*, the distinction to be drawn is the difference between fraud extraneous to the contract and fraud interwoven with the breach of the contract. *Id.* at 1240.

Here, Plaintiff's fraud in the inducement is interwoven with the breach of the contract, and therefore Count I fails as a matter of law. *See Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 U.S. Dist. LEXIS 73180 (S.D. Fla. May 29, 2014) ("[i]n assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract."); *see also Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017).

Further, not only are Barrakuda's fraud in the inducement claim duplicative of its breach of contract claim, the Amended Complaint seeks to recover the ***same*** $335,481.50 as damages for the difference between the purchase price and the Replacement Value, in counts I & III. *See Canell v. Arcola Housing Corp.*, 65 So. 2d 849, 851 (Fla. 1953) (action for damages cannot be maintained on grounds that the plaintiff's action for fraud and deceit was simply an indirect attempt to obtain damages for breach of contract).[1]

Because Barrakuda has not, and cannot, allege the existence of any representation by Del Valle, or any Defendant for that matter, which goes beyond the Corporate Defendants' performance under the Merchants Agreement, dismissal *with prejudice* is proper as to Count I.

*(ii) Plaintiff' Waived its Fraud Claims as a Matter of Law*

As was the case in the original Complaint, the Amended Complaint crystalizes the fact that Barrakuda strategically chose to forgo pursuit of an action against Defendants despite the fact that it *admits* to knowing that her supposed "cover story" explaining why the Goods could not delivered was "false." (Am. Compl. ¶¶ 26, 27). Consequently, Plaintiff's fraud claims should be dismissed *with prejudice*.

---

[1] Since any punitive damages in this case would necessarily be based entirely on Plaintiff's breach of contract theory, such damages would not be an appropriate substitute for a showing of independent damages. *See Williams v. Peak Resorts Int'l, Inc.*, 676 So. 2d 513, 517 (Fla. 5th DCA 1996)).

Once discovered, a party claiming fraud, misrepresentation or deceit has a duty to promptly take affirmative action or it waives the fraud. *See Benn v. Key West Propane Gas Corp.*, 72 So. 2d 910, 912-13 (Fla. 1954). Where a party intentionally relinquishes a known right by failing to timely demand performance of the obligations appurtenant to that right, that party is barred from subsequently enforcing his claim. *Davis v. Davis*, 123 So.2d 377 (Fla. 1st DCA 1960). Similarly, a party waives a claim for fraud by modifying the contract after he knew or should have known of the fraud. *See Harpold v. Stock*, 65 So.2d 477, 478 (Fla. 1953).

The decision in *Coral Gables Imported Motorcars*, 673 F.2d 1234 (11th Cir. 1982) provides a strong example of this principal. In that case, the court, applying Florida law, disposed of the plaintiff's fraud claim because the plaintiff executed a subsequent agreement with the defendant after the first contract between the parties had expired. Prior to the execution of the second agreement, the plaintiff learned that defendants had made several false promises. *Id*. at 1240. The court found that this knowledge, coupled with the execution of a subsequent agreement, effectively waived the plaintiff's fraud claim. *Id*.

Similarly, Barrakuda, believing that it was the subject of a fraud, made a strategic business decision and elected to modify the Merchants Agreement instead of filing suit. *See Deemer v. Hallett Pontiac, Inc.*, 288 So. 2d 526, 528 (Fla. 3d DCA 1974) (Florida law provides for an election of remedies in fraudulent inducement cases). By modifying the Merchants Agreement with the knowledge of (alleged) fraud and ratifying that decision through its course of conduct, Barrakuda intentionally waived any potential claim for fraudulent inducement. *See Citron v. Wachovia Mortg. Corp.*, 922 F. Supp. 2d 1309, 1322 (M.D. Fla. Feb. 12, 2013) *citing Sunrise Farms, Inc. v. Wright*, 376 So.2d 457, 458 (Fla. 1st DCA 1979); *see also Englezios v. Batmasian*, 593 So. 2d 1077 (Fla. 4th DCA 1992). Accordingly, Plaintiff's fraud claims should be dismissed *with prejudice*.

  C. **This Mater is Governed by the UCC**.

  Because the ultimate allegations of fact within the Amended Complaint establish that the Plaintiff failed to conduct itself in accordance with the UCC, all of Plaintiff's claims, especially Plaintiff's tort and punitive damage claims, should be dismissed *with prejudice*.

  As the Court noted on page 6 of the Dismissal Order, Article 2 of the Florida Uniform Commercial Code governs the parties' relations because the Merchants Agreement involves the sale of goods. *See Baker v. Brunswick Corp.*, 2018 WL 1947433 (M.D. Fla. April 25, 2018). The UCC imposes definite restrictions on the conduct of the parties to the transactions it governs and limits relief available where regulated transactions wind up in Court. *See Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1326, 1328 (S.D. Fla. 1999).

  Barrakuda's ultimate complaint concerns the insufficient value of the "substitute products" it consented to accept in place of the original Goods. (Am. Compl. ¶ 46). Accordingly, it is the non-conformity of the Replacement Goods that forms the basis for Barrakuda's claim. As the Court noted in its Dismissal Order, to the extent that Barrakuda considered the Replacement Goods to be non-conforming, it was incumbent upon it to affirmatively avoid acceptance and put DFWI on notice of same. *See* § 672.607(3)(a), Fla. Stat. Under that provision, after accepting the Replacement Goods and within a reasonable time after it discovered or should have discovered any breach, Plaintiff was required to notify the seller of a breach or be barred from any remedy.

  Despite the Court's express admonition to "either amend the Complaint to include such allegations" or "comply [with the notice requirement] prior to filing an Amended Complaint," Plaintiff has failed to allege that it fulfilled with the notice requirements set forth in § 672.607, Fla. Stat. Since Plaintiff failed to provide timely notice, it is barred from any remedy.

Accordingly, Plaintiff's failure subjects the Count III to dismissal. *See Meyer v. Colavita USA Inc.*, 2011 WL 13216980, at *21 (S.D. Fla. Sept. 13, 2011); *see also Garcia v. Clarins USA*, 2014 U.S. Dist. LEXIS 182426 at *18 (S.D. Fla. Sept. 5, 2014) (Plaintiff must give notice of the breach under Fla. Stat. § 672.607(3)(a)); *Exim Brickell LLC v. PDVSA Servs. Inc.*, 516 F. App'x 742, 758 (11th Cir. 2013) (buyer required to put seller on notice of non-conforming goods).

D. **Plaintiff's Claim for Punitive Damages is Improper**.

For reasons known only to Barrakuda's counsel, the Amended Complaint *again,* and in direct defiance of the Court's Dismissal Order[2] contains a separate count for punitive damage. Its inclusion is also contrary to Plaintiff's *own representation*, found in its Response to Defendants' Motion to Dismiss, to "assert punitive damages as a 'Prayer for Relief' instead of as a separate claim." (*See* Pltf's Resp., pg. 15 [D.E. 15]).

Regardless of how Barrakuda configures it claims, this case belongs under the UCC framework. Within the boundaries of the UCC, Barrakuda may not recover punitive damages. *See* § 671.106, Fla. Stat. (special or penal damages may not be obtained "except as specifically provided in [the Uniform Commercial Code] or by other rule of law." Further, Florida law does not allow the award of punitive damages when the compensatory damages for both the breach of contract and fraud claim compensate for the same injuries. *See Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1543 (11th Cir. 1990) ("Where the compensatory damages requested in a count for tort are identical to the compensatory damages sought in a count for breach of contract, compensatory damages and punitive damages for the tort are not recoverable.").

---

[2] As the Court noted therein, "punitive damages are not considered a separate cause of action in the Eleventh Circuit. *See Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir. 1999)."

Finally, to the extent that Count II is an attempt to re-plead Plaintiff's civil theft claim,[3] the Amended Complaint remains devoid of any allegations to support such an attempt. Specifically, Plaintiff fails to allege that the Defendants had the requisite criminal intent prior to the alleged breach. *See Island Travel & Tours, Ltd.*, 2020 WL 1451990, at *3; *see also* paragraph fn. 5 of the Dismissal Order. If anything, the Corporate Defendants' performance under the Modification negates any notion of criminal intent. *See Segal v. State*, 98 So. 3d 739, 744 (Fla. 4th DCA 2012). Accordingly, Barrakuda's claim for punitive damage is not allowable under the claims it has brought and also not appropriate based on the facts of the case.

Consequently, the Court should enter an Order: (1) finding that Plaintiff has failed state claim for Civil Theft under Florida Statute §772.11; (2) rule that Plaintiff has raised this claim "without substantial fact or legal support;" (3) dismiss this claim *with prejudice*; and (3) award Defendants their reasonable attorneys' fees and costs pursuant to Florida Statute §772.11(1).

## IV. Conclusion

The Amended Complaint is a continuation of Plaintiff's failure to acknowledge the concrete factual and legal barriers to its claims. The Court's Dismissal Order put Plaintiff on squarely notice of these barriers, but Plaintiff has persisted in its unwarranted pursuit of Del Valle and the Corporate Defendants. More than a year removed from Defendants' original Motion to Dismiss, which identified these very same limitations, it's time for Plaintiff's case to be dismissed with finality.

WHEREFORE, Defendants, Zazaby Jewels, Inc., Duty Free World, Inc., and Mayra Del Valle, requests that the Court enter an Order dismissing the Complaint in its entirety, **with prejudice**, and for such further relief that this Court deems just.

---

[3] Plaintiff's Prayer for Relief expressly seeks treble damages under § 772.11(1), Florida Statutes.

CASE NO.: 1:19-cv-23004-JEM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all parties on the attached Service List by using the CM/ECF system on the **23rd** day of October, 2020.

KRINZMAN, HUSS, LUBETSKY
 FELDMAN & HOTTE
800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone: (305) 854-9700
Facsimile: (305) 854-0508
Primary email:   mif@khllaw.com
                          gna@khllaw.com
Secondary email: eservicemia@khllaw.com

By: _____
Michael I. Feldman, Esquire
Florida Bar No. 665541
George N, Andrews, Esquire
Florida Bar No. 15885


mif:tmh

CASE NO.: 1:19-cv-23004-JEM

## SERVICE LIST

**Guy F. Giberson, Esq.**
**Walter J. Mathews, Esq.**
Mathews Giberson, LLP
219 Davie Blvd.
Fort Lauderdale, FL 33315
Primary E-mail: gfg@mathewsllp.com
Secondary E-mail: wjm@mathewsllp.com